# No. 14-2078

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

PATRICK J. LYNCH, as trustee of the Health and Welfare
Fund and the Retiree Health & Welfare Fund of the Patrolman's
Benevolent Association of the City of New York and on behalf of all
similarly situated Plans,

       Plaintiff-Appellant,

vs.

NATIONAL PRESCRIPTION ADMINISTRATORS, INC.; EXPRESS
SCRIPTS, INC.; JOHN DOES, 1-25

       Defendants-Appellees.

Appeal from the United States District Court
Eastern District of Missouri
Hon. Henry E. Autrey
United States District Judge

## APPELLEES' BRIEF
## FOR NATIONAL PRESCRIPTION ADMINISTRATORS AND
## EXPRESS SCRIPTS, INC.

HUSCH BLACKWELL LLP

Mark G. Arnold
Melissa Z. Baris
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Phone: 314.480.1500
Fax: 314.480.1505
Mark.arnold@huschblackwell.com
Melissa.baris@huschblackwell.com

Attorneys for Appellees

## <u>SUMMARY AND WAIVER OF ORAL ARGUMENT</u>

In 2004, the New York Attorney General sued Express Scripts, Inc. ("Express Scripts") on behalf of , *inter alia*, "non-ERISA health and prescription drug plans of the State and its political subdivisions," seeking restitution and injunctive relief on their behalf. In 2008, Express Scripts agreed to a Consent Judgment for injunctive relief and $27 million in restitution, in exchange for a release for itself and its "past and present subsidiaries," including National Prescription Administrators ("NPA").

Plaintiff Lynch is trustee of two non-ERISA welfare benefit plans ("PBA Plans"), which cover New York City police officers and are funded by the City of New York pursuant to collective bargaining agreements. The misconduct alleged by the PBA Plans against Express Scripts and NPA is identical to that alleged by the Attorney General and released in the Consent Judgment.

The District Court correctly held that Lynch's claims are barred by the Consent Judgment and *res judicata*. The Attorney General was exercising statutory and *parens patriae* authority to act on behalf of government plans. Since both the law and the facts are clear, the Court need not spend its valuable time hearing argument.

i

# CORPORATE DISCLOSURE STATEMENTS

National Prescription Administrators, Inc.'s parent corporation is Express Scripts, Inc., whose parent company is Express Scripts Holding Company, and no other publicly traded corporation owns more than 10% of its stock.

Express Scripts, Inc.'s parent corporation is Express Scripts Holding Company and no other publicly traded corporation owns more than 10% of its stock.

Appellate Case: 14-2078     Page: 3     Date Filed: 08/15/2014 Entry ID: 4186577

# TABLE OF CONTENTS

Summary and Waiver of Oral Argument ........................... i

Corporate Disclosure Statements ..................................... ii

Table of Contents.............................................................. iii

Table of Authorities.......................................................... v

Statement of Issues Presented for Review ......................... 1

Statement of the Case ...................................................... 2

    I.     Introduction.................................................... 2

    II.    Lynch Sued Express Scripts And NPA Alleging Wrongful Conduct On Behalf Of All Government Plans Using Either Of The PBM Defendants ...................................................... 3

        A.    The PBA Plans Are Governmental Plans ... 3

        B.    Lynch Sued Express Scripts And NPA Alleging Wrongful Conduct With Respect To Their PBM Services For All Self-Funded Non-ERISA Plans.................. 4

    III.   The Attorney General Sued Express Scripts On Behalf Of The People Of The State Of New York And All New York Government Plans .............................................................. 7

    IV.   The Attorney General Entered Into A Consent Judgment Releasing Express Scripts And Its Subsidiaries From All Claims ............................................................. 11

Appellate Case: 14-2078   Page: 4   Date Filed: 08/15/2014 Entry ID: 4186577

V.      Proceedings In This MDL Lawsuit...................... 13

Summary of the Argument ................................ 17

Argument ......................................................... 19

I.      The District Court Properly Granted Summary Judgment To Express Scripts And NPA, Because The Consent Judgment Released Lynch's Claims Against Express Scripts And NPA, In That The Attorney General, On Behalf Of The People Of The State Of New York, Settled And Released All Claims Against Express Scripts And Its Subsidiaries Arising From Any Related Conduct............................................................ 19

II.     The District Court Properly Granted Summary Judgment To Express Scripts And NPA, Because Res Judicata Bars Lynch's Claims, In That:............................................... 30

        A.      Lynch's Claims Rest On The Same Transactions Or Series Of Transactions As The Attorney General Lawsuit; And ..... 31

        B.      The PBA Plans Were In Privity With The Attorney General ............................... 39

Conclusion ....................................................... 52

Certificate of Compliance ................................. 53

Certificate of Service ....................................... 54

iv

# TABLE OF CASES AND OTHER AUTHORITIES

**Cases**                                                            **Page(s)**

*Alaska Sports Fishing Assn. v. Exxon Corp.,*
    34 F.3d 769 (9th Cir. 1994)......................................   45

*Alfred L. Snapp & Son., Inc. v. Puerto Rico,*
    458 U.S. 592 (1982)................................................   43

*Altimore v. Mount Mercy College,*
    420 F.3d 763 (8th Cir. 2005)...................................   36

*Badgley v. City of New York,*
    606 F.2d 358 (2nd Cir. 1979) ..................................1, 45, 47

*Barone v. Marone,*
    2007 WL 4458118 (S.D.N.Y. Dec. 14, 2007) .............1, 20, 26

*Bauer v. Planning Bd. of the Village of Scarsdale,*
    587 N.Y.S.2d 726 (N.Y. App. Div. 1992)...................   32

*City of Tacoma v. Taxpayers of Tacoma,*
    78 S.Ct. 1209 (1958)................................................1, 41

*Cole v. Int'l Union, United Auto., Aerospace & Agric.*
    *Implement Workers of Am.,*
        533 F.3d 932 (8th Cir. 2008)...........................39, 46

*Commonwealth of Puerto Rico ex rel. Quiros v. Bramkamp,*
    654 F.2d 212 (2nd Cir. 1981) ...................................1, 49

*Dixson v. Newsweek,*
    562 F.2d 626 (10th Cir. 1977)..................................   36

*Expert Electric, Inc. v. Levine,*
    554 F.2d 1227 (2nd Cir. 1977) .................................   40

Appellate Case: 14-2078    Page: 6    Date Filed: 08/15/2014 Entry ID: 4186577

*Gibbs v. Randolph,*
    250 F.2d 41(5th Cir. 1957)....................................... 36

*Givati v. Air Techniques, Inc.,*
    960 N.Y.S.2d 196 (N.Y. App. Div. 2013).................... 24

*Gualandi v. Adams,*
    385 F.3d 236 (2nd Cir. 2004) .................................. 46

*Hartnett Co. v. New York State Thruway Auth.,*
    155 N.Y.S.2d 100 (Ct. Claims 1956) ......................... 37

*Holland v Sam's Club,*
    487 F.3d 641 (8th Cir. 2007)....................................40, 46

*In re Hemingway,*
    39 B.R. 619 (N.D.N.Y. 1983).....................................43-44

*In re Hunter,*
    827 N.E.2d 269, 274 (N.Y. 2005) ..............................30-31

*In re Taibbi,*
    213 B.R. 261 (E.D.N.Y. 1997)................................... 43

*In re Y&A Securities Group Litig.,*
    38 F.3d 380 (8th Cir. 1994)..................................... 27

*Insurance Co. of the State of Pa. v. HSBC Bank USA,*
    882 N.E.2d 381 (N.Y. 2008)..................................... 31

*Lewis v. City of New York,*
    2011 WL 3273939 (E.D.N.Y. July 29, 2011) .............1, 28

*Local 456 Int'l Brotherhood of Teamsters v. Town of*
    *Cortlandt,*
        327 N.Y.S.2d 143 (S.Ct. 1971)......................... 51

*Lucas v. Planning Bd. of the Town of LaGrange,*
    7 F. Supp.2d 310 (S.D.N.Y. 1998).............................. 45

vi

*Monahan v. New York City Dept. of Corrections*,
    214 F.3d 275 (2nd Cir. 2000) ................................... 40

*New York ex rel. Spitzer v. St. Francis Hosp.*,
    94 F. Supp.2d 399 (S.D.N.Y. 2000) ........................... 43

*People ex rel. Cuomo v. Merkin*,
    26 Misc.3d 1237(A), 2010 WL 936208
        (N.Y. Sup. 2010) ............................................... 49

*People ex rel. Vacco v. Mid Hudson Medical Group, P.C.*,
    877 F. Supp. 143 (S.D.N.Y. 1995) ............................. 50

*People v. Applied Card Systems, Inc.*,
    894 N.E.2d 1 (N.Y. 2008) ......................................... 30

*People v. Peter & John's Pump House, Inc.*,
    914 F. Supp. 809 (N.D.N.Y. 1996) .......................... 42, 44, 50

*Reilly v. Reid*,
    407 N.Y.S.2d 645 (N.Y. 1978) ................................... 48

*Rivera v. Wyckoff Heights Med. Ctr.*,
    978 N.Y.S.2d 337 (N.Y. A.D. 2014) ........................... 1, 19

*Schwartzreich v. E.P.C. Carting Co.*,
    668 N.Y.S.2d 370 (N.Y. App. Div. 1998) .................... 31

*Smith v. Russell Sage College*,
    54 N.Y.2d 185 (1981) .............................................. 32

*State of N.Y. ex rel. Vacco v. Reebok Int'l., Ltd.*,
    96 F.3d 44 (2nd Cir. 1996) ....................................... 41

*State v. Grasso*,
    11 N.Y.3d 64 (N.Y. 2008) ......................................... 42

Appellate Case: 14-2078   Page: 8   Date Filed: 08/15/2014   Entry ID: 4186577

*Support Ministries for Persons with AIDS, Inc. v.*
    *Village of Waterford, N.Y.,*
        799 F. Supp. 272 (N.D.N.Y. 1992) .................... 44

*Sure-Snap Corp. v. State Street Bank & Trust Co.,*
    948 F.2d 869 (2nd Cir. 1991) ................................. 37

*U.S. ex rel. Anti-Discrimination Center v.*
    *Westchester County,*
        712 F.3d 761 (2nd Cir. 2013) .......................... 37

*U.S. v. FMC Corp.,*
    531 F.3d 813 (9th Cir. 2008) ................................ 37

*U.S. v. Olin Corp.,*
    606 F. Supp. 1301 (N.D. Ala. 1985) ...................... 45

*Waldman v. Village of Kiryas Joel,*
    207 F.3d 105 (2nd Cir. 2000) ............................... 32

*Waldman v. Village of Kiryas Joel,*
    39 F. Supp.2d 370 (S.D.N.Y. 1999),
        *aff'd*, 207 F.3d 105 (2nd Cir. 2000) .................1, 34, 36

*Wang v. Paterson,*
    2008 WL 5272736 (S.D.N.Y. Dec. 18, 2008) .............1, 27-28

## **Other Authority**

29 U.S.C. § 1002(32) ........................................... 46

NY Executive Law § 63(1) ................................7, 40

NY Executive Law § 63(12) .............................40, 42

NY General Business Law Article 22-A, § 349 ...................7, 40,

......................................................................42, 48

Appellate Case: 14-2078    Page: 9    Date Filed: 08/15/2014 Entry ID: 4186577

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

I.  Whether the Consent Judgment and release of Express Scripts and its subsidiaries from all claims related to the conduct alleged in the Attorney General Complaint bars Lynch's claims, which are based on the identical alleged conduct?

*Rivera v. Wyckoff Heights Med. Ctr.*, 978 N.Y.S.2d 337 (N.Y. A.D. 2014)

*Barone v. Marone*, 2007 WL 4458118 (S.D.N.Y. Dec. 14, 2007)

*Wang v. Paterson*, 2008 WL 5272736 (S.D.N.Y. 2008)

*Lewis v. City of New York*, 2011 WL 3273939 (E.D.N.Y. July  29, 2011)

II.  Whether *res judicata* bars Lynch's claims, when the Attorney General sought and obtained relief on behalf of all non-ERISA welfare plans of the State and its political subdivisions, based on the identical conduct that Lynch alleges?

*Waldman v. Village of Kiryas Joel*, 39 F. Supp.2d 370 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2nd Cir. 2000)

*City of Tacoma v. Taxpayers of Tacoma*, 78 S.Ct. 1209 (1958)

*Badgley v. City of New York*, 606 F.2d 358 (2nd Cir. 1979)

*Commonwealth of Puerto Rico ex rel. Quiros v. Bramkamp*, 654 F.2d 212 (2nd Cir. 1981)

1

## STATEMENT OF THE CASE

### I.   **Introduction**.

Plaintiff Patrick Lynch ("Lynch") has sued on behalf of two governmental employee benefit plans, the PBA Plans.[1]  Lynch's Statement of the Case mischaracterizes both his own pleadings and the pleadings filed by the New York Attorney General ("Attorney General Complaint").  Lynch attempts to divorce the two lawsuits by characterizing his lawsuit as based solely on the PBA Plans' contracts with NPA, and the Attorney General lawsuit as based solely upon New York State's contract with Express Scripts.  Neither characterization is accurate.

Lynch's Complaint does not even assert a breach of contract claim, and it is not limited to the PBA Plans' relationship with NPA.  Lynch sued both Express Scripts and NPA alleging misconduct in connection with Pharmacy Benefits Manager ("PBM") services provided by both entities, whom they collectively call the "PBM

---

[1] Plaintiff is Patrick Lynch, on behalf of the Health & Welfare Fund of the Patrolmen's Benevolent Association of the City of New York and the Retiree Health & Welfare Fund of the Patrolmen's Benevolent Association of the City of New York.  Lynch's Complaint refers to these two entities as the "PBA Plans."  App. 213 (¶ 1). On appeal, Appellant's Brief refers to the PBA Plans as the "Funds." The terms are used interchangeably herein.

2

Defendants." In this putative class action, Lynch asserted that the alleged misconduct of both Express Scripts and NPA is common to all plans using either PBM Defendant.

Neither was the Attorney General Complaint limited to New York State's contract with Express Scripts. The Attorney General sued on behalf of all governmental plans in the State of New York. The Attorney General's claims were not limited to breach of contract, but rather encompassed claims under common law and consumer protection statutes applicable to all New York governmental plans and consumers. The New York Consent Judgment was not limited to New York's contract with Express Scripts, but rather broadly released Express Scripts *and its subsidiaries* from all claims that could have been asserted relating to the contracts *or conduct* alleged in the lawsuit.

## II. Lynch Sued Express Scripts And NPA Alleging Wrongful Conduct On Behalf Of All Government Plans Using Either Of The PBM Defendants.

### A. The PBA Plans Are Governmental Plans.

Lynch has admitted that the PBA Plans are governmental plans. App. 207 (¶ 49); App. 358 (¶ 49). The PBA Plans provide prescription drug benefits to current and retired New York City

3

police officers, pursuant to a collective bargaining agreement with the City of New York.  App. 216 (¶ 14).    The PBA Plans are funded by the City of New York.  App. 207 (¶ 51); App. 358 (¶ 51).

## B. Lynch Sued Express Scripts And NPA Alleging Wrongful Conduct With Respect To Their PBM Services For All Self-Funded Non-ERISA Plans.

Lynch brought this lawsuit against Express Scripts and NPA on or about February 26, 2003.  He alleges that NPA served as the PBM for the PBA Plans from 1981 until April 2002, and that "[f]rom April 2002 through August 2002, Express Scripts served as PBM to the PBA Plans."  App. 216 (¶ 14); 218 (¶ 22).  Lynch's Complaint collectively refers to NPA and Express Scripts as the "PBM Defendants."  App. 213 (¶ 1).

Lynch purported to bring this lawsuit as a class action on behalf of a nationwide class of "all current and former self-funded non-ERISA employee benefit Plans for which NPA and/or ESI serve or have served as the Plan's PBM."  App. 225-226 (¶ 38); App. 213 (¶ 1).  The Complaint alleges purported "questions of law or fact common to Class Members," relating to the conduct of the collective "PBM Defendants."  App. 226-229 (¶¶ 40-41).  The Complaint alleges that the claims of the PBA Plan are typical of all plans

4

because all of the plans' claims "arise out of similar, if not identical facts, constituting the wrongful conduct of Defendants." App. 229 (¶ 43).

Lynch asserted claims for common law breach of fiduciary duty (Count I), breach of fiduciary duty under ERISA (Counts II-VI), accounting (Count IX), and violations of state consumer law statutes (Count X). App. 230-246. Lynch has since dismissed his ERISA claims, and the District Court entered summary judgment on the consumer law claims, so that the only claims remaining against the PBM Defendants are common law breach of fiduciary duty (Count I) and accounting (Count IX). *See* App. Br. at p. 4, fn. 1, and p. 9-10 and fn 2. Lynch's Complaint does not contain a claim for breach of contract. App. 212-247.

Lynch's Complaint rests on the following alleged conduct by the "PBM Defendants":

- The PBM Defendants allegedly entered into contracts with drug manufacturers, by which the PBMs receive certain discounts, payments or rebates. App. 214 (¶ 4); App. 220 (¶ 26(e)); App. 233 (¶ 58(c)) ("Rebate Claims");

5

- The PBM Defendants allegedly artificially inflated prescription drug prices. App. 232 (¶ 53(e)); App. 233 (¶ 58(e)) ("Price Inflation Claims");

- The PBM Defendants allegedly "create[d] pricing 'spreads'" by contracting with retail pharmacies (retail pharmacy spreads) and drug manufacturers (mail order pricing spreads) to receive price discounts for drugs and then charging higher rates to the Plans. App. 213 (¶ 3); App. 219-220 (¶ 26(a)-(d)); App. 233 (¶ 58(a)-(b)) ("Spread Claims");

- The PBM Defendants allegedly sold data concerning Plan members. App. 233 (¶ 58(f)) ("Data Claims"); and

- The PBM Defendants allegedly received benefits from drug manufacturers for favoring specific drugs on their drug formularies and incentivizing Plan members to utilize specific favored drugs. App. 214 (¶ 5); App. 220 (¶ 26(f)-(g)); App. 233 (¶ 58(d)) ("Drug Switching Claims").

Appellate Case: 14-2078    Page: 15    Date Filed: 08/15/2014 Entry ID: 4186577

### III. The Attorney General Sued Express Scripts On Behalf Of The People Of The State Of New York And All New York Government Plans.

On August 4, 2004, the New York Attorney General brought a lawsuit against Express Scripts in New York state court ("Attorney General Lawsuit"). App. 249-285. The Attorney General sued on behalf of: (1) the People of the State of New York; (2) the State of New York; and (3) the New York Department of Civil Service ("NY DCS"), the administrator of New York State Health Insurance Plan ("NYSHIP") and the Empire plan. App. 255 (¶¶24-27). The Attorney General sued on behalf of New York plans and their members, pursuant to his statutory authority under NY Executive Law §§ 63(1) and (12), and NY General Business Law ("GBL") Article 22-A, § 349. App. 255 (¶ 27).

The Attorney General Lawsuit rested on the following alleged conduct:

- Express Scripts allegedly entered into contracts with drug manufacturers by which Express Scripts received certain rebates. App. 249 (¶ 1); 252 (¶ 12); 267 (¶ 88) ("Rebate Claims");

7

- Express Scripts allegedly artificially inflated prescription drug prices. App. 272-273 (¶¶ 108-112) ("Price Inflation Claims");

- Express Scripts allegedly created pricing "spreads" by contracting with retail pharmacies to pay them for drugs at prices that differed from the rates paid by the Plans. App. 253-254 (¶¶ 18-20); 271-272 (¶¶ 107-108, 111) ("Spread Claims");

- Express Scripts allegedly sold data concerning plan members. App. 252-253 (¶ 13), 269-270 (¶¶ 96-99) ("Data Claims"); and

- Express Scripts allegedly received payments from drug manufacturers for favoring a manufacturer's drugs through its "drug preference" and drug "switching" programs. App. 249 (¶ 1); 275-279 (¶¶ 126-141) ("Drug Switching Claims").

While the Attorney General asserted claims against Express Scripts for allegedly breaching its contract to provide PBM services to the Empire Plan, the Attorney General Complaint also alleged that Express Scripts' conduct had caused higher drug costs for

8

"government employee benefit plans and their members." App. 249-250. It asserted common law and statutory claims on behalf of other New York governmental plans. App. 249-250, 280, 282-285.

In its Requested Relief, the Attorney General sought a judgment: "[d]irecting defendants to pay restitution and damages to injured members of the Empire Plan and other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions." App. 284 (¶ 6). The Attorney General also sought injunctive relief enjoining Express Scripts from the alleged conduct "insofar as those activities relate to the Empire Plan, other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions, and the members of such plan." App. 284 (¶ 1).

A year after the Attorney General filed his lawsuit, the Attorney General confirmed that he had sued on behalf of all governmental plans in New York. On June 8, 2005, the New York Supreme Court *sua sponte* entered an order staying the Attorney General lawsuit pending the outcome of the *Wagner/Scheuerman* (OMCE/UUP) lawsuit in the instant Multidistrict Litigation (MDL), which was brought on behalf of members of the New York Empire

9

Plan. AA.[2] 44 [Attorney General's Motion to Vacate].[3] The Attorney General filed a motion in New York state court to vacate the stay, arguing that the OMCE/UUP lawsuit involved only a "subset" or "fraction" of the parties, issues and relief pursued by the Attorney General, because the Attorney General sued on behalf of all government plans. The Attorney General asserted:

> While the OMCE/UUP Case seeks class certification for all Empire Plan members, this action is brought on behalf of the Empire Plan (by DCS, as administrator of the plan, and the State, which pays the majority of the premiums as well as CIGNA's and ESI's fees)**, other New York government plans**, as well as Empire Plan members. The Court disregarded the larger breadth of this action, in which the Attorney General represents all of the parties in interest, and overlooked the independent and significant interests of the State in enforcing the $4 billion State Contract, ensuring the integrity of the public contracting process, safeguarding the investment of taxpayers, protecting its employees (for whom it developed the Empire Plan and contracted with CIGNA and ESI) **and other consumers in New York**.

---

[2] Appellees will refer to the Appellees Appendix as AA.

[3] The consolidated *Wagner/Scheuerman* lawsuit is also referred to as the "OMCE/UUP" lawsuit, as the lawsuits were brought by James Wagner on behalf of the Organization of New York Management Confidential Employees (OMCE) and William Scheuerman on behalf of the United University Professions, Local 2190, American Federation of Teachers (UUP). In its Order, the District Court also held that the *Wagner/Scheuerman* claims are barred by *res judicata*. AA. 80. The *Wagner/Scheuerman* plaintiffs have not appealed.

Appellate Case: 14-2078     Page: 19     Date Filed: 08/15/2014 Entry ID: 4186577

> [This action] seeks recovery for all damages due to the Empire Plan for breach of DCS's contract with CIGNA and CIGNA's subcontract with ESI, **as well as relief for members of other New York government plans, in addition to seeking recovery for Empire Plan members**.

AA. 31-33 (emphasis added).

## IV. The Attorney General Entered Into A Consent Judgment Releasing Express Scripts And Its Subsidiaries From All Claims.

On or about July 25, 2008, the Attorney General entered into a Consent Order and Judgment ("Consent Judgment") with Express Scripts. App. 286-309. The Consent Judgment was executed by the Plaintiffs in the Attorney General Lawsuit, which it defined as "the People of the State of New York, the New York State Department of Civil Service, and the State of New York." App. 286, 292 (¶ 22). The Consent Judgment binds "ESI," which it defined to include "Express Scripts Inc. and ESI Mail Pharmacy Service, Inc., and their respective past and present subsidiaries, affiliated companies, corporate predecessors, successors and assigns." App. 290 (¶ 16).

Pursuant to the Consent Judgment, the Defendants agreed to pay $27 million "to the State, in full and complete settlement of all

11

causes of action asserted in the Complaint in this matter." App. 287 (¶ 4). Express Scripts also agreed to specific injunctive relief that will inure to every Client Plan and Consumer in New York. App. 292-304 (¶¶ 26-41). The Consent Judgment broadly defines "Client Plan," to mean "the Empire Plan and any other pharmacy benefit plan with its principal place of business in New York State for which Defendants either provide or administer a pharmacy benefit plan in New York State." App. 288-289 (¶ 9). The Consent Judgment defines "Consumer" as any "person who receives prescription drug benefits under a plan sponsored by a Client Plan." App. 289 (¶ 10).

In return for the consideration set forth in the Consent Judgment, the Plaintiffs agreed to the following release:

> The Plaintiffs, individually and collectively, **release all Defendants and their respective past and present parent corporations, subsidiaries**, **affiliates**, limited liability companies, and partnerships, and the respective past and present officers, directors, employees, agents, and attorneys of any of them, as well as the respective predecessors, successors, executors, administrators and assigns of any of them (collectively, the "Released Persons") **from any and all civil claims, damages, penalties, and causes of action, which the Plaintiffs could have asserted** through and including the Effective Date of this Judgment, **related either to the parties' performance under the contracts or subcontracts**

12

**specified in the Complaint or any amendments thereto, or to any allegations, omissions, or acts that are contained in the Complaint filed in this action (the "Covered Conduct").**

App. 305 (¶ 44(a)) (emphasis added).

## V.    Proceedings In This MDL Lawsuit.

Lynch sued Express Scripts and NPA in the Southern District of New York on February 26, 2003.  App. 212-248.  On May 20, 2005, Lynch's lawsuit was transferred to the Eastern District of Missouri, as part of this MDL proceeding.

Pursuant to the MDL case management order, the parties provided periodic Joint MDL Status Reports.  *See, e.g.*, App. 166-177.  The Joint MDL Status Report filed on September 11, 2008,[4] which is the first Status Report that groups cases into "tracks," recites:  "For case management purposes, the parties and the Court have grouped these cases into three tracks."  AA. 5.  The tracks set forth in the September 11, 2008 Report were:

(a)    ERISA cases brought against ESI ("ESI ERISA track");

---

[4] The MDL was transferred to Judge Autrey on August 27, 2008, upon Judge Limbaugh's retirement. [MDL Doc. 340].

13

(b)     Cases alleging common law claims against ESI and NPA, and ERISA claims against NPA ("non-ERISA/NPA-ERISA track"); and

(c)     The claim brought by Fidelity ("Fidelity track").

AA. 5-8.

At that time, the parties defined Track b, the "Non-ERISA/NPA-ERISA Track," to include <u>all</u> claims against NPA and Express Scripts, <u>except</u> ERISA claims against Express Scripts and the Fidelity claim.  AA. 7-8.  Accordingly, the *Wagner/Scheuerman* claims (non-ERISA claims brought by Empire Plan members against Express Scripts) were included in this track, along with Lynch's claims.  <u>Id.</u>  At that time, the parties' proposals for a scheduling order focused on deadlines for class certification discovery and briefing.  AA. 14-15.[5]

The parties submitted their next Joint MDL Status Report on October 2, 2009.  App. 178-196.  In that Report, the parties

---

[5] On July 24, 2008, the Court vacated its previous class certification briefing schedule for the non-ERISA actions against both ESI and NPA.  [MDL Doc. 331]; AA 11.  A week later, on July 30, 2008, the Court entered an Order denying Plaintiffs' motion for class certification in the ERISA actions against ESI.  [MDL Doc. 332].

Appellate Case: 14-2078     Page: 23     Date Filed: 08/15/2014 Entry ID: 4186577

changed the Track definitions, and the former so-called "non-ERISA/NPA-ERISA Track" was split into three tracks:

- The "Express Scripts/Non-ERISA" cases (comprised of *Wagner/Scheuerman,* and the related *Brynien* lawsuit) became Track No. 3; App. 186-188.  Each of the lawsuits in Track 3 had been stayed; the parties proposed that the stay be lifted to allow Defendants to file their motion for summary judgment to determine whether Plaintiffs' claims in those cases were resolved by the Consent Judgment.  App. 187-188.

- The "NPA/Non-ERISA" cases (comprised of the *Lynch* lawsuit and related *COBA* lawsuit) became Track No. 4; App. 188-192.  Plaintiffs here sought to proceed with their motions for class certification and for summary judgment on whether NPA was a fiduciary.  App. 190-191.  The parties proposed scheduling orders for briefing of the class certification motion and all parties' motions for summary judgment.  App. 190-192.

- The "NPA/ERISA" cases became Track 5; App. 192-194.

On July 2, 2010, Express Scripts and NPA filed a motion for summary judgment in the *Wagner, Scheuerman, Brynien, COBA,* and *Lynch* lawsuits, asserting that each of these lawsuits were

15

barred by *res judicata* and the Consent Judgment. AA. 19-22. Lynch filed his response brief on September 9, 2010. AA. 23-38. On March 31, 2014, the District Court entered its Opinion, Memorandum and Order, AA. 61-81, and Judgment, App. 396, granting Express Scripts' and NPA's motion for summary judgment on *res judicata* grounds. Only Lynch has appealed.

16

## SUMMARY OF THE ARGUMENT

The District Court correctly entered summary judgment for Express Scripts and NPA for two separate reasons. First, Express Scripts and NPA have a binding release of all claims. The Attorney General filed an action against Express Scripts seeking restitution and injunctive relief, not just for the Empire Plan, but also for all non-ERISA pharmacy drug benefit plans of the State and its political subdivisions.

Express Scripts and the Attorney General settled that lawsuit via a Consent Judgment that ordered payment of $27 million and broad injunctive relief. In return, the Attorney General gave a broad release, not just to Express Scripts or the Express Scripts subsidiary that had contracted with the State of New York, but to all Express Scripts subsidiaries. That necessarily included NPA.

Lynch's argument that the Attorney General Complaint did not expressly reference NPA's contract with the PBA Plans is irrelevant. The scope of the Release was substantially broader than the contract claims specifically referenced in the Attorney General's Complaint, and included all claims against Express Scripts and its subsidiaries arising out of the covered conduct. It would have been

17

superfluous to have included all Express Scripts subsidiaries and conduct in the Release unless that Release extended beyond the contract between Express Scripts and the State.

Second, the doctrine of *res judicata* bars Lynch's claims. All parties agree that the Consent Judgment is a judgment on the merits. The claims alleged in the Attorney General Complaint arose from the same transactions or series of transactions as Lynch's claims: the alleged misconduct of Express Scripts and its subsidiaries in the provision of drug benefits to non-ERISA employee welfare benefit plans in New York. The Attorney General's Complaint expressly alleged damage to all such plans and expressly sought restitution and injunctive relief on their behalf.

The PBA Plans were in privity with the Attorney General for two reasons. First, the relevant New York statutes gave him authority to sue on behalf of all New York non-ERISA public employee plans and he clearly asserted claims on their behalf. Second, New York law allows the Attorney General to sue as *parens patriae* when, as here, there are substantial public interests such as the fair and equitable treatment of pharmacy benefit plans for

18

public employees.  Lynch has waived any argument to the contrary by failing to present it to the District Court.

## ARGUMENT

**I.    The District Court Properly Granted Summary Judgment To Express Scripts And NPA, Because The Consent Judgment Released Lynch's Claims Against Express Scripts And NPA, In That The Attorney General, On Behalf Of The People Of The State Of New York, Settled And Released All Claims Against Express Scripts And Its Subsidiaries Arising From Any Related Conduct.**

The Attorney General, acting on behalf of the People of New York, released the claims of all non-ERISA government welfare plans in New York.  A "valid release constitutes a complete bar to an action on a claim which is the subject of the release."  *Rivera v. Wyckoff Heights Med. Ctr.*, 978 N.Y.S.2d 337, 340 (N.Y. A.D. 2014).  "[W]here a release is unambiguous, the intent of the parties must be ascertained from the plain language of the agreement."  *Id.*

Here, the scope of the Release is clear:  in return for $27 million and injunctive relief, the Attorney General agreed to release Express Scripts *and its subsidiaries and affiliates* from all claims related *either* to their contracts with the State of New York *or the conduct alleged* in the Attorney General Complaint.  The Consent Judgment defines "ESI" to mean "ESI, Inc. . . and their

19

respective past and present subsidiaries, affiliated companies . . ."

App. 290 (¶ 16). The Release provides:

> The Plaintiffs, individually and collectively, **release all Defendants and their respective past and present** parent corporations, **subsidiaries**, **affiliates**, limited liability companies, and partnerships, and the respective past and present officers, directors, employees, agents, and attorneys of any of them, as well as the respective predecessors, successors, executors, administrators and assigns of any of them (collectively, the "Released Persons") **from any and all civil claims, damages, penalties, and causes of action, which the Plaintiffs could have asserted** through and including the Effective Date of this Judgment, **related either to the parties' performance under the contracts or subcontracts specified in the Complaint** or any amendments thereto, **or to any allegations, omissions, or acts that are contained in the Complaint filed in this action (the "Covered Conduct").**

App. 305 (¶ 44(a)) (emphasis added).

Thus, on its face, the Released Parties include Express Scripts and its subsidiaries and affiliates, including NPA.[6] "[T]he express reference to 'agents' or 'representatives' in a general release executed by the principal entirely discharges the agents' liability for any disputes within the scope of the release." *Barone v. Marone*, 2007 WL 4458118, at *5 (S.D.N.Y. Dec. 14, 2007).

---

[6] There is no dispute that ESI acquired NPA in 2002 and that NPA is a subsidiary of ESI. *See* App. 217.

Appellate Case: 14-2078    Page: 29    Date Filed: 08/15/2014 Entry ID: 4186577

The Release includes all "Covered Conduct," which it defines as all claims which Plaintiff asserted or "could have asserted," related to "either" (1) "the contracts or subcontracts specified in the Complaint," or (2) "any allegations, omissions or acts that are contained in the Complaint." App. 305.

The conduct Lynch alleges is the exact same conduct alleged by the Attorney General. Both the Attorney General Complaint and the Lynch Complaint allege that the PBM defendants engaged in wrongful conduct with respect to the PBM program, including:

- The PBMs allegedly entered into contracts with drug manufacturers to receive certain rebates. ("Rebate Claims"); [7]

- The PBMs allegedly artificially inflated prescription drug prices. ("Price Inflation Claims");[8]

- The PBMs allegedly created pricing "spreads" by contracting with retail pharmacies and drug

---

[7] *See* Lynch Complaint, App. 214 (¶ 4); App. 220 (¶ 26(e)); App. 233 (¶ 58(c)); Attorney General's Complaint, App. 249 (¶ 1); 252 (¶ 12); 267 (¶ 88).

[8] *See* Lynch Complaint, App. 232 (¶ 53(e)); App. 233 (¶ 58(e)); Attorney General's Complaint, App. 272-273 (¶¶ 108-112).

21

manufacturers to pay them for drugs at prices that differed from the prices paid by the plans ("Spread Claims");[9]

- The PBMs allegedly sold plan member data. ("Data Claims");[10] and

- The PBMs allegedly received benefits from drug manufacturers for favoring specific drugs ("Drug Switching Claims").[11]

The District Court expressly found that the Attorney General Lawsuit was based on the same conduct alleged in Lynch's lawsuit. In its Order, the District Court enumerated the conduct alleged in both the Attorney General Lawsuit and in the Lynch Lawsuit. *Cf.* Order, p. 4 (AA. 64) *with* Order, pp. 11-12 (AA. 71-72). As this chart

---

[9] *See* Lynch Complaint, App. 213-214 (¶ 3); App. 219-220 (¶¶ 26(a)-(d)); App. 233 (¶¶ 58(a)-(b)); Attorney General Complaint, App. 253-254 (¶¶ 18-20); 271-273 (¶¶ 107-108, 111).

[10] *See* Lynch Complaint, App. 233 (¶ 58(f)); Attorney General Complaint, App. 252-253 (¶ 13), 269-270 (¶¶ 96-99).

[11] *See* Lynch Complaint, App. 214 (¶ 5); App. 220 (¶¶ 26(f)-(g)); App. 233 (¶ 58(d)); Attorney General's Complaint, App. 249-250 (¶ 1); 275-279 (¶¶ 126-141).

Appellate Case: 14-2078      Page: 31      Date Filed: 08/15/2014 Entry ID: 4186577

illustrates, the District Court found that both of these lawsuits complain of identical conduct:

| "Conduct" alleged in Attorney General Lawsuit (Order, at p. 4) (AA. 64) | "Conduct" alleged in Lynch Lawsuit (Order, at pp. 11-12) (AA. 71-72) |
|---|---|
| "Retaining rebates and money that allegedly belonged to the plans" | "retaining rebates and other moneys from manufacturers" |
| "'Artificially inflating' pass-through prices of generic drugs" | "inflating prices of prescription drugs" |
| "manipulating its pharmacy pricing 'spread'" | "pharmacy pricing spreads; mail order pricing spreads" |
| "Selling plan data" | "selling plan information" |
| "Fraudulently operating its 'drug preference' and drug 'switching' programs." | "drug 'switching' programs" |

Lynch attempts to escape the effect of the Release by arguing that the "'allegations, omissions, or acts that are contained in the [Attorney General] Complaint' are specific to ESI's dealings with the DCS and the Empire Plan." App. Br. at p. 26. This argument fails, for several reasons.

23

First, the plain language of the Release belies Lynch's argument. The Release is not limited to Express Scripts' contracts with the State of New York, but expressly includes all Covered Conduct, which it defines to include **either** the contracts referenced in the Attorney General Complaint **or** the conduct alleged in the Complaint. The second prong must necessarily encompass conduct other than that arising under the State's contracts with Express Scripts, or it would be superfluous. *See Givati v. Air Techniques, Inc.*, 960 N.Y.S.2d 196, 198 (N.Y. App. Div. 2013) ("a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous").

Second, as previously explained, the Release is not limited to Express Scripts, but expressly includes its past and present subsidiaries, which necessarily includes NPA. The inclusion of all Express Scripts subsidiaries confirms that the parties intended the Release to cover more than just the contract with New York State. The only Express Scripts subsidiary that had a contract with the State's Empire Plan was ValueRx. The inclusion of the other subsidiaries would have been superfluous if the Release were limited to the Empire Plan.

Appellate Case: 14-2078     Page: 33     Date Filed: 08/15/2014 Entry ID: 4186577

Third, the Attorney General lawsuit was not limited to the Empire Plan. In his Complaint, the Attorney General alleged that Express Scripts' conduct had "injured members of the Empire Plan *and other non-ERISA health and prescription drug benefit plans of the State and its political subdivisions*," App. 284 (¶¶ 1, 6) (emphasis added). The Complaint sought both restitution and injunctive relief on behalf of those non-ERISA plans. App. 284-285. A year after filing the Complaint, the Attorney General filed a motion confirming that his lawsuit sought relief for all government plans:

> Only this action can provide relief to, and protect the interests of, the State and DCS (the parties to the State Contract at issue), the Empire Plan members, *and other government plans and their members*. . . . [The lawsuit seeks] *relief for members of other New York government plans*, in addition to seeking recovery for Empire Plan members.

AA. 50, 54 (emphasis added).

Fourth, all parties clearly intended to grant Express Scripts the broadest release possible, in exchange for significant monetary and injunctive relief that would inure to the benefit of all New York consumers. The Attorney General secured a recovery of $27 million and broad injunctive relief on behalf of the "People of the State of

25

New York" and all New York "Consumers." In exchange, Express Scripts secured a broad release to protect it and its subsidiaries from future claims. *See Barone*, 2007 WL 4458118, at * 5 (release of party interpreted broadly to include release of claims against its agent, "in light of the parties' stated intention to achieve global peace").

Express Scripts agreed to implement injunctive relief in the form of various business practices that will inure to every "Client Plan" and "Consumer" in New York. App. 292-304. The Consent Judgment defines "Consumer" and "Client Plan" broadly, to include not just government plans but "***any other pharmacy benefit plan with its principal place of business in New York State***" for which Defendants are PBM. App. 288-289 (emphasis added). Thus, the injunctive relief inures to the benefit of every pharmacy benefit plan and every consumer in the State of New York.

Moreover, the injunctive relief extends to potential future clients of Express Scripts and its subsidiaries, so the PBA Plans will benefit from that injunctive relief if they ever seek a proposal from Express Scripts or NPA.

Appellate Case: 14-2078    Page: 35    Date Filed: 08/15/2014 Entry ID: 4186577

It is important to recognize that releases can be substantially more expansive than just the *res judicata* effect of a consent judgment. Indeed, the very case on which Lynch relies, *In re Y&A Securities Group Litig.*, 38 F.3d 380 (8th Cir. 1994), so holds.

Y&A was a publicly traded company that turned out to be a Ponzi scheme, with predictable results. A class action against Y&A was certified and settled. The class not only released Y&A; it released "all other actual and potential defendants" from any claims "in any way related" to the purchase of Y&A stock. 38 F.3d at 383.

Thereafter a class member filed an arbitration claim against his broker, alleging misconduct in connection with his purchase of Y&A shares wholly unrelated to the Ponzi scheme. The broker was not a party to the class action and had made no contribution to the settlement. Obviously, *res judicata* would in no way bar a claim against the broker but this Court held that the release did cover the broker and affirmed an injunction against proceeding with arbitration. 38 F.3d at 384.

Similarly, in *Wang v. Paterson*, 2008 WL 5272736 (S.D.N.Y. 2008), the parties entered into a settlement and release of defendant and "its current, former, or future officials, officers,

27

employees, heirs, devisees, agents." 2008 WL 5272736 at *4. The court held that this release barred subsequent claims against officials and employees not named in the original lawsuit – regardless of whether such claims would have otherwise been barred. *Id.* at * 4-5:

> [T]he release provision itself expressly extends its preclusive effect to a long list of persons and entities, irrespective of whether those persons and entities would fall within claim preclusion's privity limitation. Accordingly, the Court concludes that the Stipulation unambiguously reflects the parties' intention to preclude a wide class of potential claims and litigants without reference to the contours of res judicata.

*Id.* at *5.

The court reasoned that, because *res judicata* would apply to the consent judgment in any event, the plaintiff's argument that the release was limited to the parties bound by *res judicata* "would render the release provision redundant." *Id.* at * 5 & n.8; *see also Lewis v. City of New York*, 2011 WL 3273939 (E.D.N.Y. July 29, 2011) (holding that claims were barred by broad settlement and release in prior lawsuit, even though they involved transactions that would not otherwise have been within the *res judicata* effect of judgment in prior lawsuit).

Appellate Case: 14-2078    Page: 37    Date Filed: 08/15/2014 Entry ID: 4186577

Allowing Lynch to pursue his claims would deprive Express Scripts of the benefit of its bargain. Express Scripts agreed to pay $27 million to the People of the State of New York and implement broad injunctive relief. Express Scripts did not control how the Attorney General allocated the State's $27 million recovery among New York plans or consumers, and whether the PBA Plans are entitled to payment out of this recovery is between them and the Attorney General. If Express Scripts is forced to pay a judgment in this lawsuit, Express Scripts will lose the benefit of the Release for which it bargained and the New York plans will obtain a double recovery.

Accordingly, the Release bars Lynch's claims. For this reason alone, the Court should affirm the summary judgment in favor of Express Scripts and NPA.

Appellate Case: 14-2078    Page: 38    Date Filed: 08/15/2014 Entry ID: 4186577

## II. The District Court Properly Granted Summary Judgment To Express Scripts And NPA, Because Res Judicata Bars Lynch's Claims, In That:

### A. Lynch's Claims Rest On The Same Transactions Or Series Of Transactions As The Attorney General's Lawsuit; And

### B. The PBA Plans Were In Privity With The Attorney General.

The District Court correctly held that *res judicata* bars Lynch's claims. Under New York law, *res judicata* applies when (1) there is a judgment on the merits by a court of competent jurisdiction; (2) the subsequent claim rests on the same transactions or series of transactions; and (3) plaintiff in the second action was a party to the first action or is in privity to such a party. *People v. Applied Card Systems, Inc.* 894 N.E.2d 1, 12 (N.Y. 2008) (citations omitted). *Res judicata* applies to claims that could have been litigated in the first action as well as to claims that were actually litigated. *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005). The purpose of the doctrine is "to provide finality in the resolution of disputes, recognizing that considerations of judicial economy as well as fairness to the parties mandate, at some point, an end to litigation." *Id.* at 274-75 (citations omitted).

30

Here, the parties agree that a consent judgment is a judgment on the merits, App. Br. at 28 n.9, and there is no dispute that the New York court had jurisdiction. The District Court correctly concluded that Express Scripts and NPA had easily satisfied the other two elements of *res judicata*.

### A. Lynch's Claims Rest On The Same Transactions Or Series Of Transactions As The Attorney General's Lawsuit.

New York follows the "transactional approach to res judicata," which is "broader than the principles adopted by the federal courts." *Insurance Co. of the State of Pa. v. HSBC Bank USA*, 882 N.E.2d 381, n.3 (N.Y. 2008). Under the transactional approach, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or seeking a different remedy." *Hunter*, 827 N.E.2d at 274 (citation omitted).

"Generally, a set of facts will be deemed a single 'transaction' for res judicata purposes if the facts are closely related in time, space, motivation, or origin, such that treating them as a unit would be convenient for trial and would conform to the parties' expectations." *Schwartzreich v. E.P.C. Carting Co.*, 668 N.Y.S.2d

31

370, 372 (N.Y. App. Div. 1998); *Bauer v. Planning Bd. of the Village of Scarsdale*, 587 N.Y.S.2d 726, 727 (N.Y. App. Div. 1992) (same). As the Court of Appeals of New York explained, the focus is on the "gravamen of the wrong":

> [E]ven if there are variations in the facts alleged, or different relief is sought, the separately stated 'causes of action' may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought. This holds true even when several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts or would call for different measures of liability or different kinds of relief.

*Smith v. Russell Sage College*, 54 N.Y.2d 185, 192 (N.Y. 1981) (citations omitted); *see also Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2nd Cir. 2000) (*res judicata* applied where "the various components of the overlapping facts [were] part of the same pattern of behavior" and "derive ultimately from the same origin or motivation").

Here, as explained above, Lynch's claims arise from the same series of transactions and conduct as the Attorney General Lawsuit, including Rebate Claims, Price Inflation Claims, Spread Claims, Data Claims, and Drug Switching Claims. *See supra*, pp. 5-8, 21-23. The District Court expressly found in its Order that Lynch's

32

lawsuit and the Attorney General Lawsuit involved the exact some conduct and are "based on precisely the same transactions and alleged misdeeds." AA. 77, 80; *see also* AA. 64, 71-72; *supra*, pp. 21-23.

Lynch hangs his proverbial hat on the argument that his claims are based on the PBA Plans' contract with NPA, while the Attorney General Complaint is based on the State's contract with Express Scripts. This argument fails, on every level, both factually and legally.

First, Lynch's attempt to characterize his lawsuit as purely a contract dispute ignores the inconvenient fact that his *Complaint does not even contain a breach of contract claim.*[12] Rather, his Complaint alleges common law and statutory claims based upon alleged wrongful conduct of both Express Scripts and NPA in providing PBM services. In any event, "*res judicata* attaches even if

---

[12] As Lynch notes in his Brief, Lynch filed a motion for leave to amend the Complaint to add a breach of contract claim on December 14, 2010 – seven years after he filed this lawsuit, and after ESI and NPA filed the instant motion for summary judgment. App. Br. p. 4, fn. 1. The District Court did not rule on this motion to amend before entering judgment in favor of ESI and NPA on all claims four years later. *Id.* Lynch has not appealed the District Court's failure to grant him leave to amend.

33

the claims are based upon different legal theories or the complaint seeks different remedies." *Waldman v. Village of Kiryas Joel*, 39 F. Supp.2d 370, 378 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2nd Cir. 2000).

Second, Lynch ignores the inconvenient fact that his own lawsuit lumps together claims on behalf of plans contracting with either Express Scripts or NPA, in a single putative class action. His Complaint collectively refers to both Express Scripts and NPA as the "PBM Defendants," and alleges wrongful conduct by both "PBM Defendants," with absolutely no attempt to distinguish the alleged conduct of NPA from that of Express Scripts. He asked the Court to certify a nationwide class of "all current and former self-funded non-ERISA employee benefit Plans for which NPA and/or ESI serve or have served as the Plan's PBM." App. 225-226 (¶ 38); App. 213 (¶ 1). He asserted that his claims were common to and typical of the claims of all plans using Express Scripts or NPA as PBM, because all plans' claims against Express Scripts and NPA "arise out of ***similar, if not identical facts, constituting the wrongful conduct of Defendants***." App. 229 (¶ 43) (emphasis added).

34

As Lynch recognizes, Br. at 29-30, one factor in the *res judicata* analysis is whether the claims "form a convenient trial unit" and "their treatment as a unit conforms to the parties' expectations." Having expressly pleaded that ***both*** conditions were satisfied, Lynch is hardly in a position to argue the exact opposite on appeal.

Lynch's attempt to characterize the Attorney General Complaint as solely a contract dispute between the NY DCS and Express Scripts is equally misplaced. The Attorney General lawsuit was not limited to the Empire Plan under the New York State contract, but rather asserted statutory and common law claims on behalf of all government plans. And the Consent Judgment released claims pertaining to <u>either</u> the contracts <u>or</u> the conduct described in the Attorney General Complaint, thus making clear that the lawsuit applied to conduct beyond just the referenced contracts.

Further, *res judicata* applies not only to claims the Attorney General asserted, but also any claims he could have asserted. "*[R]es judicata* prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if

35

the issue or defense was not actually raised or decided." *Waldman*, 39 F. Supp.2d at 377 (citations omitted). Likewise, the Consent Judgment broadly released all claims "which the Plaintiffs could have asserted." App. 305.

To the extent that the Consent Judgment is deemed broader than the Attorney General Complaint, the Consent Judgment implicitly amended the complaint to include allegations against Express Scripts subsidiaries and affiliates. A consent decree is a form of stipulation. *Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005). Federal courts have long recognized that a binding stipulation amends the pleadings by necessary implication. *Gibbs v. Randolph*, 250 F.2d 41, 43 (5th Cir. 1957); *Dixson v. Newsweek*, 562 F.2d 626, 636 (10th Cir. 1977). The Consent Judgment covered all Express Scripts subsidiaries, including NPA.

At bottom, the concept of "transaction" must "receive a flexible, common-sense construction that recognizes the practical realities presented." *Waldman,* 39 F. Supp.2d at 377 (internal punctuation omitted). "Also dispositive to a finding of preclusive effect is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the

36

judgment entered in the first action." *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 874 (2nd Cir. 1991). Express Scripts bargained for a broad release encompassing all of its predecessors and subsidiaries and all of the misconduct alleged in the Attorney General Complaint, in exchange for $27 million and injunctive relief. Allowing Lynch to press identical claims against NPA would deprive Express Scripts of the benefit of that bargain.

Lynch argues that the District Court proceedings show that Express Scripts and NPA did not regard the Consent Judgment as covering his claims. App. Br. at 33-34. Under New York law, extrinsic evidence is inadmissible to construe an unambiguous contract. *Hartnett Co. v. New York State Thruway Auth.*, 155 N.Y.S.2d 100, 105 (Ct. Claims 1956). The same rule applies to interpreting a consent decree. *U.S. v. FMC Corp.*, 531 F.3d 813, 819 (9th Cir. 2008); *U.S. ex rel. Anti-Discrimination Center v. Westchester County*, 712 F.3d 761, 767 (2nd Cir. 2013).

In any event, neither of the two bits of evidence on which Lynch relies is persuasive. It is certainly true that, in 2006, when the District Court granted Express Scripts' *unopposed* motion to stay the *Wagner/Scheuerman* case, Express Scripts did not also ask

37

the District Court to stay this case. [MDL Doc. 183]. However, that was before the Consent Judgment was entered, confirming that the scope of the Attorney General lawsuit applied to NPA. Notably, Lynch does not assert that he would have consented to any requested stay or that any such motion would have been unopposed.

Nor is it relevant that Express Scripts and NPA did not announce their intention to seek summary judgment in this case after the entry of the Consent Judgment. As set forth above, when the parties submitted their Joint MDL Status Report on October 2, 2009, the parties to the *Wagner/Scheuerman* lawsuit jointly proposed that Express Scripts move forward on its motion for summary judgment based on the Consent Judgment before proceeding to other issues in that lawsuit. App. 186-188. In the instant lawsuit, however, Lynch sought to proceed with his motions for class certification and summary judgment on whether NPA was a fiduciary, so the parties agreed to a scheduling order for briefing on class certification and all parties' summary judgment motions. App. 188-192. In any event, the Status Reports and scheduling

38

orders are purely for case management purposes and simply have no bearing on the parties' positions on the merits of the case.

This lawsuit clearly covers the same series of transactions as the Attorney General Lawsuit and Consent Judgment, and therefore is barred by *res judicata*.

### B.    The PBA Plans Were In Privity With The Attorney General.

Lynch argues that the PBA Plans were not in privity with the Attorney General.    This argument is wrong for two independent reasons.    First, the Attorney General's Complaint expressly sought relief on behalf of the PBA Plans.    Second, an action under the Attorney General's *parens patriae* power binds all citizens of the State of New York.

At the outset, Lynch has waived his arguments about privity by not presenting them to the District Court:

> [T]his court will not consider arguments raised for the first time on appeal. . . .  As such, a party cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment.

*Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 533 F.3d 932, 936 (8th Cir. 2008) (citations

39

omitted).  *Accord, Holland v Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (party "waived this argument by not presenting it to the district court").

Even if Lynch's arguments were properly before this Court, the District Court correctly held that "the Attorney General was vested with the authority to act on Plaintiffs' behalf."  *See* Order, AA. 78-80.  NY Exec. Law § 63(1) plainly authorizes the Attorney General to represent governmental plans of the State and its political subdivisions.  Similarly, the Attorney General was vested with authority to bring suit "in the name of the people of the state of New York," under NY Exec. Law § 63(12) and NY GBL Article 22-A, § 349(b).

Under New York law, "literal privity is not a requirement for *res judicata* to apply."  *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2nd Cir. 2000). "Instead, a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation."  *Id.* (citation omitted); *accord Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2nd Cir. 1977) (same).

40

"When a state litigates common public rights, the citizens of that state are represented in such litigation by the state and are bound by the judgment." *State of N.Y. ex rel. Vacco v. Reebok Int'l., Ltd.*, 96 F.3d 44, 48 (2nd Cir. 1996) (citation omitted); *see also City of Tacoma v. Taxpayers of Tacoma*, 78 S.Ct. 1209, 1221 (1958) (citizens "in their common public rights as citizens of the State, were represented by the State in [prior] proceedings, and, like it, were bound by the judgment").

The Attorney General Complaint clearly alleged claims on behalf of the PBA Plans, as set forth above. The Complaint alleged that Express Scripts had caused higher drug prices to "government employee benefit plans and their members." App. 249-250. The Attorney General sought restitution and injunctive relief on behalf of "non-ERISA health and prescription drug benefit plans of the State and its political subdivisions." App. 284. The District Court held:

> [T]he Attorney General brought the AG Lawsuit to represent the New York government plans on behalf of the state and local government employees. The suit encompassed more than the Empire Plan; the suit was brought on behalf of the Empire Plan and all other 'non-ERISA health and prescription drug benefit plans of the State and its political subdivisions, and the members of

41

such plans.'  Plaintiffs' claims based upon specific plans fall squarely within the parameters of the AG suit.

AA. 79.

Second, the PBA Plans were in privity with the Attorney General because he acted in his *parens patriae* capacity pursuant to Executive Law § 63(12) and General Business Law Art. 22-A § 349(b).  Lynch did not address the state's *parens patriae* authority in his summary judgment response below, AA. 23-38, and thus cannot assert these arguments for the first time on appeal.

"Parens patriae is a common-law standing doctrine that permits the state to commence an action to protect a public interest, like the safety, health or welfare of its citizens."  *State v. Grasso*, 11 N.Y.3d 64, 69 n.4 (N.Y. 2008).  A state can exercise *parens patriae* authority when it asserts: (1) "a quasi-sovereign interest, which is an interest apart from the interests of the particular private parties," and (2) injury to "a substantial segment" of the state's population.  *People v. Peter & John's Pump House, Inc.*, 914 F. Supp. 809 (N.D.N.Y. 1996); *Grasso*, 11 N.Y.3d at n.4 (same).  Both of these requirements are met here.

42

A "State has a quasi-sovereign interest in the health and well-being – both physical and economic – of its residents in general." *Alfred L. Snapp & Son., Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). The Attorney General lawsuit alleged that Express Scripts engaged in conduct that "result[ed] in higher drug costs for the Empire Plan and other government employee benefit plans and their members." App. 249-250, 275-278. These allegations clearly invoke the State's recognized "quasi-sovereign interest" in the "economic well-being of its residents." *New York ex rel. Spitzer v. St. Francis Hosp.*, 94 F. Supp.2d 399, 420-21 (S.D.N.Y. 2000) (holding state had *parens patriae* standing in suit against hospital alleging that hospital's pricing schemes caused "higher prices for health care services for insurers and their policy-holders").

In addition, the Attorney General alleged consumer fraud and deceptive trade practices. App. 249, 252-254, 282-83. The State "has a quasi-sovereign interest" in "ensuring the consumers within its borders are protected from unfair or deceptive business practices." *In re Taibbi*, 213 B.R. 261, 271 (E.D.N.Y. 1997); *accord In re Hemingway*, 39 B.R. 619 (N.D.N.Y. 1983) ("one would be hard-pressed to argue that protection against consumer fraud is *not* a

43

subject of vital importance to the economic well-being of the citizens of New York State").

The Attorney General also alleged that the "drug preference" or "switching" programs "fail[ed] to take into account patient health and safety" and may result in additional doctor visits or side effects. App. 249-250; 275-278. This allegation implicates the physical health and well-being of New York citizens, a concern falling squarely within the State's *parens patriae* authority. *See Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, N.Y.*, 799 F. Supp. 272, 277 (N.D.N.Y. 1992) ("the state's interest in the 'health and well-being'" of its citizens "is the primary category of quasi-sovereign interest") (citation omitted).

Further, there can be no doubt that the Attorney General Lawsuit affected a substantial segment of the state's population. New York courts "broadly construe" this requirement, and there is "no numerical talisman." *Peter & John's Pump House,* 914 F. Supp. at 812. *See, e.g.*, *In re Hemingway*, 39 B.R. at 622 (state had *parens patriae* standing to represent six named consumers, as "part of a much broader scheme of consumer protection").

44

When a state brings a *parens patriae* action, its citizens are in privity with the state and are bound by the judgment. *See Lucas v. Planning Bd. of the Town of LaGrange*, 7 F. Supp.2d 310, 327-29 (S.D.N.Y. 1998) ("courts have generally looked to the concepts underlying the doctrine of *parens patrie*" to determine whether individuals are in privity with the state for purposes of *res judicata*); *Badgley v. City of New York*, 606 F.2d 358, 364 (2nd Cir. 1979) (holding that Pennsylvania "represented all of its citizens" in *parens patriae* action, so that "the terms of the decree are thus conclusive upon all Pennsylvania citizens and bind their rights"); *Alaska Sports Fishing Assn. v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994) (individuals' claims were barred by *res judicata* effect of consent decree entered by state because "the plaintiffs were privies of the governments under the *parens patriae* doctrine"); *U.S. v. Olin Corp.*, 606 F. Supp. 1301, 1304 (N.D. Ala. 1985) ("once a state represents all of its citizens in a *parens patriae* suit, a consent decree or final judgment entered in such a suit is conclusive upon those citizens and is binding upon their rights").

Lynch makes several arguments as to why the PBA Plans were not in privity with the Attorney General, none of which Lynch raised

45

below.  *See* PBA Funds' opposition to summary judgment, AA. 23-38.  These arguments are thus not before this Court.  *Cole,* 533 F.3d at 936; *Holland,* 487 F.3d at 644. In any event, none of these new arguments have any merit.

First, Lynch argues that Plan beneficiaries were not eligible to participate in the statewide NYSHIP plan.  App. Br. at 36-37.  This new argument is simply irrelevant, given that the Attorney General sued on behalf of all non-ERISA government plans, not just the NYSHIP plan.

Next, Lynch argues for the first time that the PBA Plans are not benefit plans of a political subdivision of the State because they are trusts established pursuant to a collective bargaining agreement with New York City.  App. Br. at 39-40.  However, Lynch has admitted that the PBA Plans are government plans.  App. 207 (¶ 49); 358 (¶ 49).  The PBA Plans provide prescription drug benefits to current and retired New York City police officers, and are funded entirely by the City of New York.  The PBA Plans clearly satisfy the definition of a non-ERISA government plan.  29 U.S.C. § 1002(32); *Gualandi v. Adams*, 385 F.3d 236, 244 (2nd Cir. 2004) (holding that union plan established by school district pursuant to collective

46

bargaining agreement and exclusively funded by government entity was a "governmental plan"); *see also* United States Department of Labor Advisory Opinion issued to PBA Plans, AA. 1-3 (finding the PBA Plans are "governmental plans" because they were "established or maintained pursuant to a collective bargaining agreement between a governmental entity and a labor union" and "are funded by, and cover only employees of, governmental entities").

Lynch argues that the PBA Plans obtained no benefit from the Consent Judgment because they had previously terminated NPA's services. App. Br. at 40-41. This is neither correct nor relevant. The Consent Judgment requires Express Scripts to make disclosures to any prospective client, which would inure to the PBA Plans' benefit in any future dealings with Express Scripts or its affiliates.[13] In any event, the Attorney General was not bound to favor the interests of former clients over the interests of current and future clients in obtaining injunctive relief. *See Badgley*, 606 F.2d at 369 (plaintiffs "cannot be allowed to collaterally attack" in a

---

[13] Notably, while Lynch claims the PBA Plans would get no benefit from injunctive relief, his Complaint seeks injunctive relief "enjoining all Defendants from engaging in the unlawful activities described herein." App. 246-247.

Appellate Case: 14-2078    Page: 56    Date Filed: 08/15/2014 Entry ID: 4186577

second suit "the wisdom of the policy choices made by their sovereign in the representation of all of its citizens acting in its capacity of Parens patriae").  If the PBA Plans believe they are entitled to a share of the $27 million recovered by the Attorney General then they can petition the State for a share of this recovery, but this has no bearing on the *res judicata* effect of the judgment. Moreover, *res judicata* applies regardless of whether parties obtained relief in the first lawsuit, as an essential purpose of *res judicata* is to "bar a second action even where further investigation of the law or the facts indicates that the controversy has been erroneously decided."  *Reilly v. Reid*, 407 N.Y.S.2d 645, 647-48 (N.Y. 1978).

Lynch argues that Art. 22-A allows the PBA Plans a private right of action in addition to any rights conferred on the Attorney General.  App. Br. at 41-42.  He does not explain why that matters for purposes of determining privity.  In virtually every case in which privity is at issue, the plaintiff in the second action will have the right to bring it unless, of course, *res judicata* bars the action.

Lynch argues, again for the first time on appeal, that the Attorney General cannot exercise *parens patriae* authority if the

48

plaintiff in an individual action could obtain complete relief. App. Br. at 42, 44. The cases Lynch cites, however, deal with the propriety of allowing a *parens patriae* action in the first place, not the *res judicata* consequences of a case that has been brought and settled. The principles of finality that underlie *res judicata* dictate that the PBA Plans should not be able to launch what amounts to a collateral attack on the Consent Judgment.

Further, it is unclear whether New York law conditions the inability of private individuals to obtain "complete relief" as a prerequisite to a *parens patriae* action. In *Commonwealth of Puerto Rico ex rel. Quiros v. Bramkamp*, 654 F.2d 212 (2nd Cir. 1981), decided just a year before the *11 Cornwell* case cited by Lynch, the Second Circuit held that a "state seeking to proceed as parens patriae need not demonstrate the inability of private persons to obtain relief if parens patriae standing is otherwise indicated." *Id.* at 217. *See also People ex rel. Cuomo v. Merkin*, 26 Misc.3d 1237(A), 2010 WL 936208 (N.Y. Sup. 2010) ("Defendants' contention that the AG must show an inability of the allegedly injured individuals to obtain relief in a private suit, is without merit. Case law does not demonstrate such a requirement").

49

In any event, it is unlikely that an action by any individual plans could obtain complete relief to vindicate the public interest protected by the Attorney General: assuring the fair and equitable provision of pharmacy benefits to public employees in the State of New York. "Private litigants might not achieve the complete relief that the State seeks because they have a greater incentive to compromise requests for injunctive relief in exchange for increased money damages." *Peter & John's Pump House*, 914 F. Supp. at 813 (holding that the ability of individuals to bring private actions does not afford "complete relief," because the state "is in the best position to protect societal interests" and obtain "vindication of the rights" of all consumers); *accord People ex rel. Vacco v. Mid Hudson Medical Group, P.C.*, 877 F. Supp. 143 (S.D.N.Y. 1995) (the possibility that individual "might be able to obtain relief through a private suit . . . does not preclude the Attorney General from seeking 'complete relief' for all current and future" citizens affected by defendant's conduct).

Finally, Lynch argues that the PBA Plans are not bound by the Attorney General's *parens patriae* action because they are "private" trust funds. App. Br. at 43. However, Lynch's attempt to

50

characterize the PBA Plans as "private" funds overlooks the PBA Plans' significant public purpose and effect: to provide health insurance benefits to **public employees**. It is the "stated public policy of" New York to "encourage and promote collective bargaining agreements between employers, both private and public, and their employees," and the legislature has "specifically found" that employee welfare funds are "of great benefit to the employees and their families" and "are in the public interest." *Local 456 Int'l Brotherhood of Teamsters v. Town of Cortlandt*, 327 N.Y.S.2d 143, 151 (S.Ct. 1971) (holding that a municipal corporation's payments to a union trust fund established pursuant to a collective bargaining agreement, for the purchase of health insurance and benefits for municipal employees, was a permissible form of compensation to public employees for a public purpose).

Accordingly, the District Court correctly held that "Plaintiffs are clearly in privity with the NY AG, and are therefore bound by the consent Judgment. Plaintiffs' claims are therefore barred by res judicata." Order, AA. 80.

Appellate Case: 14-2078    Page: 60    Date Filed: 08/15/2014 Entry ID: 4186577

## <u>CONCLUSION</u>

For these reasons, NPA and Express Scripts respectfully submit that the Court should affirm the judgment.

Respectfully Submitted,


BY:<u>/s/  Melissa Z. Baris</u>
    Melissa Z. Baris
    Mark G. Arnold
    Thomas M. Dee
    Christopher A. Smith
    190 Carondelet Plaza, Ste. 600
    St. Louis, Mo 63105
    314.480.1500 Phone
    314.480.1505 Fax
    melissa.baris@huschblackwell.com
    mark.arnold@huschblackwell.com
    tom.dee@huschblackwell.com
    chris.smith@huschblackwell.com

    Attorneys for Defendants - Appellees

Appellate Case: 14-2078     Page: 61     Date Filed: 08/15/2014 Entry ID: 4186577

## CERTIFICATE OF COMPLIANCE

1.     I certify that this Brief consists of 9,778 words, excluding the parts of the Brief exempted by Fed. R. App. P 32(a)(7)(B)(iii), according to the word count of Microsoft Word 2010 which was used to prepare the Brief.

2.     I also certify that this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this Brief has been prepared in a proportionally spaced typeface using 14-Point Bookman Old Style font.

3.     This Brief has been scanned for viruses and are virus free.

/s/ Melissa Z. Baris
Melissa Z. Baris

Appellate Case: 14-2078   Page: 62   Date Filed: 08/15/2014 Entry ID: 4186577

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2014, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the same case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Melissa Z. Baris
Melissa Z. Baris

54